UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **LARRY RIOS,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | ) CAUSE NO. 1:22-cv-00117-SLC |
| | ) |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) |
| | ) |
| | ) |
|     **Defendant.** | ) |

## OPINION AND ORDER

Plaintiff Larry Rios appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). On July 20, 2022, Rios filed his opening brief (ECF 14), to which the Commissioner timely responded (ECF 15). Rios has not filed a reply brief, and his time to do so has passed. (*See* ECF 10). Thus, this appeal is ripe for review. For the following reasons, the Commissioner's decision will be AFFIRMED.

### I.  FACTUAL AND PROCEDURAL HISTORY

Rios applied for DIB in June 2020, alleging disability as of February 6, 2020. (ECF 9 Administrative Record ("AR") 19, 189, 207).[1] Rios's claim was denied initially and upon reconsideration. (AR 19, 83-84, 98-106, 108-17). After a timely request (AR 118-19), a hearing was held on September 21, 2021, before administrative law judge ("ALJ") Stephanie Katich, at which Rios, who was represented by counsel, and a vocational expert ("VE") testified. (AR 38-73). On November 1, 2021, the ALJ rendered an unfavorable decision to Rios, concluding that he was not

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

disabled because he could perform past relevant work, in addition to a significant number of other light-exertional jobs in the national economy, despite the limitations caused by his impairments. (AR 19-33). Rios's request for review was denied by the Appeals Council (AR 5-9), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Rios filed a complaint with this Court on April 6, 2022, seeking relief from the Commissioner's decision. (ECF 1). In his appeal, Rios alleges that: (1) the ALJ erred in analyzing and weighing the September 9, 2020, medical opinion of Abdali Shakoor Jan, M.D., an examining physician; (2) she improperly cherry-picked evidence that supported her decision; (3) she used disapproved boilerplate language and failed to build a logical bridge between the evidence and the conclusion; and (4) she overemphasized Rios's daily activities when determining residual functional capacity ("RFC") limitations. (ECF 14 at 6).

At the time of the ALJ's decision, Rios was fifty-three years old (AR 32, 189), had a high school education (AR 32, 44, 221), and had relevant work experience as a semi-skilled laser etcher operator (AR 25, 32; *see also* AR 221). In his application, Rios alleged disability due to "2 heart attacks" and a "stroke." (AR 220).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation and quotation marks omitted). The decision will be reversed "only if [it is] not supported by

substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine whether substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB must establish "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether he has a severe impairment, (3) whether his impairment is one that the Commissioner considers conclusively disabling, (4) whether he is incapable of performing his past relevant work, and (5) whether he is incapable of performing any work in the national economy. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also*

20 C.F.R. § 404.1520.[2] "[A]n affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.* (citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

*B. The Commissioner's Final Decision*

On November 1, 2021, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 19-33). As a threshold matter, the ALJ noted that Rios was insured for DIB through September 30, 2025. (AR 21). At step one, the ALJ concluded that Rios had not engaged in substantial gainful activity since February 6, 2020, his alleged onset date. (*Id.*). At step two, the ALJ found that Rios had the following severe impairments: degenerative disc disease (DDD)/radiculopathy/spondylosis of the cervical spine (status-post June 2019 cervical fusion), myocardial infarction (status-post January 2018) and percutaneous coronary intervention (status-post September 2018), cerebrovascular accident (CVA) with stent placement (February 2020), coronary artery disease, ischemic cardiomyopathy, diabetes, right partial shoulder rotator cuff tear/adhesive capsulitis (status-post recent report but not otherwise specified or documented), and obesity (height of 5 feet, 8 inches and weight of 260 pounds). (*Id.*).

At step three, the ALJ concluded that Rios did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 22). The ALJ then assigned Rios the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except as reduced by the following. The claimant can

---

[2] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks he can do despite his limitations. 20 C.F.R §§ 404.1520(a)(4), 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. *Id.* § 404.1520(e).

4

> occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but he can never climb ladders, ropes, scaffolds[.] The claimant should avoid concentrated exposure to unprotected heights, unguarded moving machinery and wet, slippery, uneven terrain, as well as fumes, odors, dusts, gases, poor ventilation, extreme heat and extreme cold. The claimant should also avoid all exposure to vibration, including vibrating surfaces and hand tools, and he can never reach overhead with the right upper extremity.

(AR 24).

The ALJ found at step four that Rios was able to perform his past work as a semi-skilled laser etcher operator at light exertion, as actually performed. (AR 31). Alternatively, the ALJ found that given his age, education, work experience, and RFC, Rios could perform other light-exertional jobs that exist in substantial numbers in the national economy, including retail marker, cleaner, and sales attendant. (AR 32-33). As such, Rios's application for DIB was denied. (AR 33).

*C. Credibility of Dr. Jan's Medical Opinion*

Rios first argues that the ALJ erred in analyzing and weighing Dr. Jan's medical opinion, which he states support greater RFC limitations. (ECF 14 at 9-11). He contends Dr. Jan's opinion gives credence to his allegations of symptoms relating to his DDD, and that such symptoms support sit-to-stand and break limitations. (*Id.*). Rios's argument, however, is ultimately unavailing.

On September 9, 2020, Dr. Jan evaluated Rios at the request of the state agency to perform a disability physical. (AR 544-51). During the visit with Dr. Jan, Rios's chief complaint was neck, shoulder, back and knee pain, with pain rated eight described as "sharp, dull, ache, shooting and stabbing." (AR 544). Of note, Dr. Jan stated in his medical findings that Rios's gait was "unsteady" (AR 548), and he observed bilateral lower extremities "trace Edema or Shiny atrophic skin" (AR 549). In his neurologic assessment, Dr. Jan noted that, though Rios presented with 4/5 right upper extremity grip strength and 5/5 left upper extremity grip strength, he had numbness and tingling in both feet, and "normal/abnormal" sensation. (*Id.*). Dr. Jan concluded the following in his medical source statement:

5

> The patient states that he can sit for 15 minutes and stand for 30 minutes. [H]e states he can walk for 0 blocks. Patient has normal fine motor skills with normal handling of objects. Normal concentration and social interaction. Remote and recent memory intact. Normal hearing, speech and vision. [H]e can carry twenty pounds short/long distances. [H]e cannot lift ten pounds over . . . head one time.

(*Id.*). Those findings, Rios argues, should have supported sit-to-stand and break limitations.

In discussing Dr. Jan's medical opinion, the ALJ acknowledged Rios's allegations of pain in the neck, shoulders, back and knees, rated at an eight out of ten pain level. (AR 29). She also recited Dr. Jan's findings, stating that there were no previous reports of unsteady gait or of limited reduction in range of motion (ROM) of the cervical/lumbar spine and shoulders/knees, bilateral numbness/tingling of the feet, trace lower extremity edema, and 4/5 right upper extremity muscle/grip strength. (*Id.*). The ALJ discussed the fact that Rios had unremarkable findings in several other areas of examination. (*Id.*). She highlighted that Dr. Jan's consultative physical examination was "performed for the express purpose of determining disability." (*Id.*). The ALJ concluded that Dr. Jan's opinion was "not persuasive of greater limitation than that determined by Agency physicians," because a "significant portion of the medical source statement" was based on Rios's subjective allegations which were inconsistent with the overall record. (*Id.*).

Rios argues that the ALJ improperly discounted Dr. Jan's medical opinion when she concluded that it was largely based on his subjective statements. (ECF 14 at 11). The Court disagrees. It is well established that an ALJ is permitted to discount a medical opinion to the extent it was based on a claimant's own subjective statements. *See Ziegler v. Astrue*, 576 F. Supp. 2d 982, 998 (W.D. Wis. 2008) ("It is well settled that an administrative law judge may disregard a medical opinion premised on the claimant's self-reported symptoms if the administrative law judge has reason to doubt the claimant's credibility." (collecting cases)), *aff'd*, 336 F App'x 563 (7th Cir. 2009); *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a

recitation of a claimant's subjective complaints."); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) ("The portion of Dr. Cascino's report concerning Mr. Diaz's limited ability to sit, stand or walk appears to be based upon Mr. Diaz's own statements about his functional restrictions at the time of the examination. The ALJ could consider this portion of the report less significant than the doctor's other findings . . . ." (citation omitted)).

Dr. Jan's medical source statement relays that "The patient *states* that he can sit for 15 minutes and stand for 30 minutes. [H]e *states* he can walk for 0 blocks." (AR 549 (emphasis added)). As the ALJ observed, the language that Dr. Jan used in his medical source statement— "The patient states . . . .[H]e states" (*id.*)—raises a reasonable inference that the restrictions therein were largely based "on [Rios's] subjective allegations . . . ." (AR 29); *see Stevenson v. Chater*, 105 F.3d 1151, 1155 (7th Cir. 1997) ("The ALJ was entitled to make reasonable inferences from the evidence before him . . . ." (internal citation omitted)). The Court "shall not reweigh the evidence on appeal," when "the portion of [a physician's] report concerning [a claimant's limitations] *appears* to be based upon [the claimant's] own statements about his functional restrictions at the time of the examination." *Diaz*, 55 F.3d at 308 (emphasis added). Therefore, in so far as the ALJ discounted Dr. Jan's medical statement regarding Rios's claims that he cannot sit for longer than fifteen minutes, stand for longer than thirty minutes, or walk a block, the ALJ was permitted to discount this portion of the medical opinion.

Rios also maintains that, even if Dr. Jan's medical opinion was based on his subjective symptom testimony, those findings are supported in the record. The Court is likewise not persuaded by this argument. It is true that Dr. Jan's examination revealed some issues with bilateral numbness, tingling of the feet, and trace lower extremity edema. (AR 549). That said, although those

symptoms may very well be consistent with other medical evidence,[3] Dr. Jan did not assign any sit-to-stand or break limitations based on those symptoms, and Rios cites no medical source opinion of record actually imposing sit-to-stand or break limitations in the RFC.

As this Court has often emphasized, "the primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove [his] claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). "The ALJ needed only to include limitations in [the] RFC determination that were supported by the medical evidence and that the ALJ found to be credible." *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011) (citations omitted). Here, Rios failed to carry his burden of providing any medical source opinions to support his claim that he cannot stand or walk six hours in an eight-hour workday or that he needs additional breaks. In sum, even assuming the symptoms identified in Dr. Jan's opinion are in fact consistent with Rios's DDD diagnosis, he still fails to identify how such would support additional RFC limitations.[4] Thus, the ALJ's treatment of Dr. Jan's opinion is not a basis for remand.

---

[3] To support the proposition that the ALJ should have given more weight to Dr. Jan's medical opinion, Rios argues that the ALJ ignored "complaints" made in June, September, October, and December 2020, which purportedly support and are consistent with Dr. Jan's findings in September 2020. (ECF 14 at 10). Rios does not indicate which "complaints" he is referring to, nor does he cite to the appropriate medical record supporting this claim. It is not the Court's duty to scour the record in search of evidence to support a claimant's arguments. *See generally Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in the record." (citation and brackets omitted)). Thus, Rios's argument is conclusory.

[4] To the extent that Rios asserts the ALJ did not acknowledge his DDD, such argument would be unavailing given that the ALJ found it to be a severe impairment at step 2. (AR 21; *see* ECF 14 at 9-10). Additionally, Rios cites generally to his pain as a symptom associated with his DDD, which he argues the ALJ overlooked. (ECF 14 at 9). The ALJ analyzed Rios's pain symptoms in depth and did not err in failing to assign greater limitations, as the Court will discuss below.

*D. Cherry-Picking*

Next, Rios argues that the ALJ cherry-picked portions of the April 6, 2020, neurologic examination performed by Nurse Practitioner Gillig. (ECF 14 at 11-13). This argument, too, fails to establish grounds for remand.

Rios was admitted to the hospital in February 2020 after experiencing stroke symptoms, notably right-sided weakness and numbness. (AR 353). He then had a follow-up visit with Catherine Gillig, N.P., on April 6, 2020. (*Id.*). During this visit, Nurse Gillig reported that Rios was "back to normal. No slurred speech or right sided weakness. . . He denie[d] any further numbness tingling or weakness." (*Id.*). The ALJ mentioned Nurse Gillig's opinion several times in her decision, opining that "while [Rios] alleged being tired since February 2020 CVA, he did not allege nor report this during April 2020 neurological follow-up; rather, and in fact, the claimant reported that he was back to normal with no weakness and walking outside." (AR 28; *see id.* ("As earlier noted, these allegations for extreme tiredness are not internally consistent with his own variable reports for ability to stand, they were not reported or alleged during April 2020 neurological follow-up, and instead, alleged being back to normal . . . .")).

Rios takes issue with the ALJ's treatment of Nurse Gillig's medical opinion, arguing that the ALJ cherry-picked her opinion because this visit was only related to Rios's CVA accident, and that "the ALJ use[d] the lack of reported symptoms to a specialist examining him regarding a specific medical event to refute the v[e]racity of later reported symptoms to his family physician." (ECF 14 at 12).[5] Additionally, he asserts that he repeatedly complained of fatigue before and after the examination with Nurse Gillig. (*Id.*)

---

[5] Contrary to Rios's assertion that "the ALJ uses the lack of reported symptoms to a specialist" (ECF 14 at 12), the examination was performed by a nurse practitioner (AR 353, 358).

9

An ALJ cannot "cherry-pick" evidence supporting one outcome, while failing to address evidence that would undercut her determination. *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *4 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted sub nom. Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021); *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984). In other words, while the ALJ can weigh conflicting opinion evidence, *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004), "[she] may not ignore entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). At the same time, "[w]hen an ALJ denies benefits, [she] must build an accurate and logical bridge from the evidence to her conclusion, and [she] may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted).

Rios's argument misses the mark. Indeed, he ignores the rest of the ALJ's decision, which accurately builds a logical bridge between the record and the ALJ's findings regarding his allegations of fatigue. The ALJ first discussed the June 16, 2020, family physician examination, which occurred immediately following Rios's application for disability, and during which Rios alleges he experienced fatigue and extreme tiredness. (AR 28). The ALJ further contrasted those reports of fatigue with his daily activity report, also dating June 2020, which reflected "his involvement in a wide range of daily activities." (*Id.*). The ALJ also noted that Rios reported fatigue symptoms during his July 23, 2020, cardiology follow-up (*id.*), and during his October 26, 2020, family physician follow-up (AR 29).

At the same time, the ALJ cited Nurse Gillig's comments in finding that Rios did not report extreme tiredness or symptoms of fatigue, as alleged before in his prior medical visits. (AR 28 (citing AR 353)). Additionally, the ALJ observed Rios was negative for fatigue symptoms during his December 31, 2020, orthopedic follow-up (AR 30 (citing AR 651-53)), a January 21, 2021,

orthopedic follow-up (*Id.* (citing AR 655-57)), and his April 26, 2021, family physician visit (AR 31 (AR 635-38)). If Rios complained about fatigue after April 2020 (other than during the October 26, 2020, family physician visit), he does not point where in the record such complaints are reflected. The ALJ cited a total of three visits occurring after the April 2020 neurologic exam with Nurse Gillig, showing that at least between December 2020 and April 2021, Rios did not report symptoms of fatigue. The ALJ properly built an accurate and logical bridge from the evidence to her conclusion that Rios's symptoms of fatigue were not persuasive, and she did not ignore an entire line of evidence. It was within her discretion to consider conflicting evidence, and she did not err in doing so.[6]

### E. Boilerplate Language

Rios further challenges the ALJ's use of boilerplate language when she concludes that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms. However, for the reasons explained in this decision, the claimant's statements, particularly those related to the lower extremities, for balance/leg numbness issues, concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the frequency and severity reflected within the medical evidence and other evidence in the record.

(ECF 14 at 13-14; *see* AR 26-27). Rios asserts that the ALJ's use of boilerplate language does not inform what evidence the ALJ relied on in concluding his claims were not credible, nor does the ALJ identify objective medical evidence which contradicts Rios's statements. (ECF 14 at 13 (citing *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012))). That, Rios concludes, means the ALJ has not built an accurate, logical bridge between the evidence and the conclusion.

---

[6] Rios also asserts that he suffers from DDD, a degenerative disease which he says worsens over time. (ECF 14 at 13). To the extent he argues that his DDD may cause his fatigue, he does not link his degenerative condition to an increase in fatigue. Even assuming so, the record does not reflect such pattern as there had been no complaints of fatigue after his October 26, 2020, visit. Rios's conclusory assertion, with no citation, that "the evidence . . .as a whole . . . shows repeated complaints of fatigue" (AR 14 at 12-13), therefore, fails. *See generally Gross*, 619 F.3d at 702.

It is true the "not entirely consistent" language is "yet another example of the continuous, confusing and meaningless boilerplate that is all too common in these decisions and that stubbornly persists in spite of the efforts of the Court of Appeals." *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018). Nevertheless, "[u]se of boilerplate is not automatically ground for remand . . . ." *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). Despite an ALJ's use of boilerplate language, "an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong." *Blackwell v. Berryhill*, No. 2:17-cv-00460-JVB-APR, 2019 WL 1397476, at *5 (N.D. Ind. Mar. 27, 2019) (citations omitted); *see also Joyce W. v. Berryhill*, No. 2:18-cv-104-JVB-JEM, 2019 WL 2353500, at *5 (N.D. Ind. June 3, 2019); *Torres v. Berryhill*, No. 2:17-cv-393, 2019 WL 2265367, at *6 (N.D. Ind. May 28, 2019). Thus, "the [boilerplate] formulation does not require a remand if the ALJ identified legitimate reasons for discrediting the claimant's testimony." *Lafayette v. Berryhill*, 743 F. App'x 697, 699 (7th Cir. 2018).

Reading the ALJ's decision as a whole and with common sense, *see Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010) ("[T]idy packaging" is not required in ALJs' decisions because the courts read them "as a whole and with common sense." (citations omitted)), the ALJ made several findings supporting her conclusion about the credibility of Rios's symptom testimony. First, the ALJ acknowledged Rios's complaints of balance and numbness pertaining to his lower extremities, citing Rios's testimony, function reports, and Dr. Jan's medical opinion. (AR 30-31). The ALJ noted Rios's testimony regarding his complaints of daily constant level five out of ten pain that travels up and down his leg as a result of a pinched nerve, that his neck pain causes tingling in the legs, and that he experiences numbness and tingling in his leg due to diabetes caused neuropathy, "which has also worsened of late[] such that this average level 4-5/10 leg pain is essentially constant and causes his legs to feel as though they are asleep." (AR 26). She noted

12

Rios's use of a non-prescribed cane, which he uses "when he does not feel comfortable with the steadiness of his balance." (*Id.*). She discussed his testimony pertaining to the "several falls" he experienced in a given week. (*Id.*). The ALJ then discussed Rios's function reports, in which he states he cannot go downstairs because he falls or experiences loss of balance, and that he has "fallen once in the tub." (*Id.*). In sum, the ALJ identified several statements Rios made concerning his leg numbness and balance issues.

Second, at various points in the RFC determination, the ALJ cites to medical record evidence which is inconsistent with Rios's statements pertaining to his lower extremity, balance, and numbness issues.[7] For example, during a February 7, 2021, discharge, Rios had no extremity pedal edema. (AR 28). The ALJ further noted unremarkable findings during Rios's visit with Dr. Jan in September 2020, including bilateral lower extremity muscle, normal heel/toe walking, and normal tandem walk with negative bilateral straight leg raising. (AR 29). On October 26, 2020, during a family physician follow-up, Rios also denied numbness on his feet. (AR 29-30). The ALJ observed that Rios denied experiencing poor balance during a December 31, 2020, orthopedic follow-up, and denied leg swelling during a February 2021 clinical exam and medical follow-up after his CVA. (AR 30). The ALJ cited the state agency physicians' decision, in which they concluded that Rios could frequently balance. (AR 27). Thus, the ALJ supported her decision with medical evidence from the record.

Again, aside from his own statements—which the ALJ did not err in finding inconsistent with the record—Rios does not point to other medical evidence the ALJ may have overlooked. *See Flener ex rel. Flener*, 361 F.3d at 448 (stating the claimant bears the responsibility of "producing medical evidence demonstrating the severity of impairments . . . ." (citation omitted)). Therefore,

---

[7] The only citation that may be consistent with Rios's testimony is Dr. Jan's medical opinion, which as discussed above, the ALJ found unpersuasive.

13

remand is unwarranted on this basis, as the ALJ properly relayed Rios's statements regarding lower extremity, numbness, and balance issues, and properly supported her conclusion that Rios's statements were inconsistent with the medical record.

### F. Activities of Daily Living

Rios finally argues that the ALJ improperly considered his daily activities in finding him less limited than he alleges. He states that the ALJ improperly found that his daily activities translate into an ability to work full time and improperly disregarded his limitations related to his headaches and pain, in performing his daily activities. (ECF 14 at 14-15 (citing *Bjornson v*, 671 F.3d at 647)). Again, Rios's argument is not persuasive.

The ALJ considered Rios's performance of various daily activities irrespective of his symptoms, including cooking, performing household chores, shopping, driving, managing personal finances, and attending to personal care independently. (AR 26-27, 30). In discussing daily activities, the ALJ acknowledged that Rios needs to rest after washing the dishes for five minutes if he pinches a nerve or after mowing on a riding mower, sits down if he engages in activities for 30 minutes, cannot go downstairs, only goes grocery shopping for a minimal number of items at a time, showers only when his spouse is at home, drives only if he feels 85% when getting up, and sometimes feels unsafe to drive. (AR 26). The ALJ also noted that Rios receives help in his daily activities. (*Id.*). In her conclusion, the ALJ found that Rios had the RFC to perform his past relevant work at the light exertional level with the following limitations:

> The claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs, but he can never climb ladders, ropes, scaffolds[.] The claimant should avoid concentrated exposure to unprotected heights, unguarded moving machinery and wet, slippery, uneven terrain, as well as fumes, odors, dusts, gases, poor ventilation, extreme heat and extreme cold. The claimant should also avoid all exposure to vibration, including vibrating surfaces and hand tools, and he can never reach overhead with the right upper extremity.

(AR 24). Rios argues that the RFC reflects an over-reliance on the daily activities he can complete, without taking into account the need for him to rest. (ECF 14 at 14-15). Therefore, Rios reiterates that the RFC should include limitations that reflect the need to take breaks and should incorporate sit-to-stand limitations, notably due to his headaches and pain. (*Id.*).

As an initial matter, the ALJ's reliance on Rios's daily activities is permissible under the applicable regulations and precedential case law, which instruct an ALJ to consider a claimant's performance of daily activities as a factor in her credibility assessment. *See Pepper v. Colvin*, 712 F.3d 351, 368-69 (7th Cir. 2013); 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017). *Compare Schmidt*, 395 F.3d at 746-47 (considering the claimant's performance of daily activities as a factor when discounting the claimant's credibility), *and Scheck*, 357 F.3d at 703, *with Mendez v. Barnhart*, 439 F.3d 360, 362-63 (7th Cir. 2006) (cautioning ALJs "against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home"), *and Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005). *See also Contreras v. Berryhill*, No. 16 CV 9037, 2017 WL 3592699, at *6 (N.D. Ill. Aug. 21, 2017) (considering a claimant's daily activities as just one factor in a credibility assessment, in contrast to improperly equating daily activities with an ability to work). While an ALJ is to consider a claimant's activities of daily living when she evaluates his subjective allegations, 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2017 WL 5180304, at *7, she must explain any inconsistencies between the claimant's activities, his complaints, and the medical evidence, *Zurawski*, 245 F.3d at 887; *Clifford*, 227 F.3d at 870 ("The ALJ did not provide any explanation for his belief that Clifford's activities were inconsistent with Dr. Combs's opinion and his failure to do so constitutes error.").

Here, there is no evidence that the ALJ only considered Rios's daily activities, placed undue weight on them, or equated such activities to an ability to work. The RFC limitations are consistent with or exceed the limitations imposed by the state agency physicians. (AR 79-80, 88-89). The ALJ also premised her RFC on "overall allegations, testimony, evidence and Agency limitations; particularly, when considered in context for obesity and more recent upper extremity/cervical complaints" and "other allegations in testimony and more recent issues regarding allegations for headaches, pain with upper extremity radiation, right shoulder citation, which are without updated clinical exam findings . . . ." (AR 31). As a result, the ALJ did not overly rely on Rios's daily activities in crafting the RFC, and the Court will not remand the ALJ's decision on this basis. Nevertheless, the Court will analyze whether the ALJ failed to account for Rios's allegations of headaches and pain in performing his daily activities.

As it pertains to allegations of headache, the ALJ did not fail to include additional limitations, nor did she overly rely on Rios's daily activities. In discussing Rios's symptom testimony, the ALJ considered his reports of chronic headaches. (AR 25-26). She also observed that he was suffering from headaches in the "most recent orthopedic records." (AR 31). Yet the ALJ noted that he was negative for headaches during an October 26, 2020, family physician follow-up (AR 29), and December 31, 2020, orthopedic follow-up (AR 30). Unarguably, the ALJ considered Rios's reports of headaches and specifically included limitations to address those headaches, stating that "[d]ue to other allegations in testimony and more recent issues regarding allegations for headaches, . . . the undersigned further limits the claimant from exposure to all vibration, . . . and precludes both environmental/pulmonary irritants[,] which might exacerbate headaches." (AR 27). Rios's claim regarding failure to include limitations due to his headaches lack merit as he does not offer any medical opinion requiring greater limitations than those imposed by the ALJ.

The same can be said about Rios's allegations of pain. Of note, Rios described experiencing daily pain in his testimony and during several medical visits. The ALJ carefully considered Rios's testimony that he suffered pain in his neck at a constant level of five out of ten that travels up and down his legs and arms; that he visited the emergency room three times, one of which was due to pain rated as greater than ten out of ten; and that the pain subsided despite a cervical fusion surgery. (AR 25). She also relayed his testimony that he needs to take breaks after activities such as washing the dishes so that he can "wait for the pain to subside . . . and cease." (AR 26). The ALJ also reported his allegations of leg pain, which he believed was caused by neuropathy related to his diabetes, and his use of a non-prescribed cane. (*Id.*). She noted his testimony that "some days" Rios could not attend to personal care because those days were "so painful," and that his performance of daily activities was mixed with intermittent periods of rest. (*Id.*).

As for Rios's allegations in his function reports, the ALJ stated:

> The claimant's January 2021 daily activity report note all manner of allegations for inability to stand or sit for too long, balance issues, constant pain, always winded, high sugar levels of 300-400, physical limitations in self-care, getting rid of the dog due to inability to provide care, and while reports of household chores, ability to concentrate, follow instructions, finish what he starts and shop essentially remain unchanged to improved compared to June 2020 report, he reports household chores are dependent on how he feels due to physical complaints of pain.

(AR 27 (citation omitted)).

In crafting the RFC, the ALJ then evaluated allegations of pain in the medical record. She noted that several medical opinions or examinations reflected allegations of pain, including an October 2020 visit reporting Rios positive for pain (AR 29), a December 2020 orthopedic follow-up reflecting worsening chest/musculoskeletal pain, ten out of ten constant neck/left upper extremity pain (AR 30), a January 2021 orthopedic follow-up during rating pain at four out of ten and pain radiating from the neck into the left upper extremity (*id.*), and an October 2021 visit for his DDD, noting severe neck pain and cervical chronic pain (AR 29).

It is clear that the ALJ did not ignore Rios's complaints about pain. In laying the reasons for the limitations in the RFC, the ALJ considered Rios's pain symptoms and additional limitations "[d]ue to other allegations in testimony and more recent issues regarding allegations for headaches, pain with upper extremity radiation, right shoulder citation," although she stated that those issues were "without updated clinical exam findings," and "[had] essentially not endured as severe for 12-months." (AR 31). She ultimately restricted Rios "from exposure to all vibration, which as seemingly noted in testimony appears to exacerbate neuropathy complaints," and she limited "the right upper extremity to never reaching overhead." (*Id.*). Thus, as it pertains to Rios's allegations of pain, the ALJ did not overly rely on his activities of daily living in omitting additional limitations. The ALJ evaluated Rios's pain at length and weighed the evidence by properly explaining the inconsistencies between his allegations of pain and the medical record.

In conclusion Rios's argument that the ALJ over-relied on his daily activities of living is misplaced. While the ALJ discussed the activities Rios could perform, she also identified his health challenges in performing them, including by discussing his allegations of pain and headaches.[8] Further, in discussing the RFC, the ALJ properly weighed Rios's testimony against the medical evidence, concluding that Rios's symptom testimony was inconsistent with the medical record. *See Zurawski*, 245 F.3d at 887; *Clifford*, 227 F.3d at 870. The Court refuses to reweigh the evidence, and thus, will not remand the Commissioner's decision on the ALJ's analysis of Rios's daily activities.

---

[8] As discussed above, the ALJ also identified medical record evidence tending to show that his lower extremity issues were not as severe as he reported.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Rios.

SO ORDERED. Entered this 29th day of September 2023.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge